# In the United States Court of Federal Claims

No. 24-1832C

(Filed: April 3, 2025)

| | |
|---|---|
| **SHIMON MAIMON, ET AL.,** | ) |
| | ) |
| | ) |
| *Plaintiffs,* | ) |
| **v.** | ) |
| | ) |
| **THE UNITED STATES,** | ) |
| | ) |
| *Defendant.* | ) |
| | ) |
| | ) |

*Meredith Leigh Martin Addy* and *Charles A. Pannell III*, AddyHart P.C., Atlanta, Georgia, for Plaintiff.

*Brian Nicholas Gross*, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for Defendant. With him on the briefs were *Brett A. Shumate*, Acting Assistant Attorney General, and *Scott Bolden*, Director.

## ORDER

In this patent infringement case, Plaintiffs, Dr. Shimon Maimon ("Dr. Maimon") and a related company, NetzVision LLC ("NetzVision"), claim that Defendant, the United States, infringed, or authorized the infringement of, several of Dr. Maimon's patents for infrared sensor technology. The government moves to dismiss. As explained below, this Court agrees that Dr. Maimon's complaint fails to allege sufficient facts to plausibly demonstrate that the government infringed or authorized the infringement of the patents at issue. Moreover, Plaintiffs fail to put the government on notice regarding which products allegedly infringe Dr. Maimon's patents. As for NetzVision, it lacks Article III standing to pursue its case — at least as the facts currently stand. Rather than dismissing this case entirely, however, this Court grants Dr. Maimon's request for an opportunity to amend his complaint to cure its defects.

I.    FACTUAL AND PROCEDURAL BACKGROUND

Dr. Maimon is an inventor who has spent the past thirty years developing technology used in infrared detectors.  ECF No. 1 ("Compl.") ¶ 19.[1]  In the late 1990s, while living in Israel, Dr. Maimon had an idea for developing an infrared detector that would be more accurate and work under a wider variety of conditions than existing infrared detectors.  *Id.* ¶ 32.  He moved to the United States approximately 25 years ago to access specialized equipment to better test and develop his ideas.  *Id.* ¶ 33.  His efforts were successful.  After several years of research, Dr. Maimon invented a revolutionary type of infrared detector technology, commonly known as "nBn" due to the detector's distinguishing design element: a barrier layer ("B") sandwiched between two layers of n-type semiconductors ("n") to reduce dark current that interferes with the sensor.  *Id.* ¶ 35.  In 2006, Dr. Maimon filed a patent for his nBn technology, and, in 2010, his first patent was granted (the '871 patent).  *Id.* ¶ 38.  In the years that followed, Dr. Maimon was awarded four more patents for related infrared technology — the '642, '528, '657, and '522 patents.  *See id.* ¶¶ 45–52.

In 2007, a year after he filed his first patent application for his infrared sensor design, Dr. Maimon demonstrated his nBn design to representatives of the Department of the Army's Night Vision and Electronic Sensors Directorate ("NVSED").[2]  *Id.* ¶ 59.  Dr. Maimon alleges that after his meeting with NVSED, the government "recognized the benefits of developing [his] nBn detector invention and began work to produce nBn detectors" at the government's Jet Propulsion Lab ("JPL") and Sandia National Laboratories ("SNL").  *Id.* ¶ 61.  According to Dr. Maimon, the government primarily researched and developed nBn detectors through the military's Vital Infrared Sensor Technology Acceleration ("VISTA") program.  *Id.* ¶¶ 16, 72–73.  The complaint alleges that VISTA "was a consortium of federal agencies, research institutions, and industrial

---

[1] As discussed *infra*, this Court assumes that the non-conclusory facts alleged in the complaint are true for the purposes of evaluating the government's motion to dismiss.

[2] *See* https://home.army.mil/walker/units-tenants (https://perma.cc/3XGK-NXAG) (describing the NVSED).  The Court takes judicial notice of these publicly available government websites or documents.  *See Bell/Heery v. United States*, 106 Fed. Cl. 300, 307 (2012) (noting that, when adjudicating motions to dismiss, this Court must "consider . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice") (citation omitted), *aff'd*, 739 F.3d 1324 (Fed. Cir. 2013).

participants that would conduct research upon and manufacture [nBn] detectors for the Government to research and evaluate." *Id.* ¶ 63.[3]

The VISTA program ran between 2011 and 2022; participants included the following agencies and corporations:  JPL; SNL; Naval Research Lab; Lockheed Martin Corporation; L3Harris Technologies ("L3Harris"); RTX Corporation (formerly the Raytheon Company); Teledyne FLIR; IQE PLC; Intelligent Epitaxy Technology, Inc.; HRL Laboratories ("HRL"); BAE Systems PLC; DRS Technologies, Inc.; Northrop Grumman Corporation; and Cyan Systems, Inc.  *Id.* ¶¶ 64, 66.  Dr. Maimon contends that these government agencies and companies, primarily through the VISTA program, infringed his patents in at least two ways.  First, he claims that the government "partner organizations in the VISTA program manufactured and used nBn for various research and development purposes." *Id.* ¶ 67.  Second, Dr. Maimon alleges that the government and third-party corporations adopted nBn technology "for many new programs or upgrades to existing programs based on the work of VISTA," and that there exist several "Government procurements beyond research, development, and prototyping of nBn detectors." *Id.* ¶¶ 91–92.

Dr. Maimon asserts five counts in his complaint — one for each patent that the government allegedly infringed.  Compl. at 37–40.[4]  He seeks a monetary judgment against the government, including reasonable compensation to be determined at trial, attorney's fees and costs, and pre- and post-judgment interest.  On January 7, 2025, the government filed its motion to dismiss for lack of subject-matter jurisdiction, failure to state a claim, and lack of standing (regarding NetzVision only).  ECF No. 8 ("MTD").  Dr. Maimon filed his response, ECF No. 9 ("Pl. Resp."), and the government filed its reply, ECF No. 10 ("Def. Reply").  The Court heard oral argument on the government's motion on March 19, 2025.

---

[3] *See, e.g.*, https://www.army.mil/article/166334/army_holds_showcase_of_infrared_technolo gy_advancements (https://perma.cc/6R5S-PNK7) (describing VISTA as "a tri-service program to regain the U.S. lead in advanced infrared sensor capabilities"); https://www.army.mil/article/200518/investing_in_army_laboratory_to_find_innovative_sol utions (https://perma.cc/NG4S-JURD) ("The VISTA program was a multiyear Army-led initiative that also involved the Navy and Air Force. The effort began in 2011 and aimed to maintain U.S. military superiority in infrared sensor capabilities."); Compl. ¶ 60.

[4] The page numbers to which the Court cites are those in the footer of the particular electronically filed PDF document referenced.

## II.    JURISDICTION

"The jurisdiction of the Court of Federal Claims is defined by the Tucker Act, which gives the court authority to render judgment on certain monetary claims against the United States." *Radioshack Corp. v. United States*, 566 F.3d 1358, 1360 (Fed. Cir. 2009) (citing 28 U.S.C. § 1491(a)(1)). This Court's subject-matter jurisdiction includes claims by U.S. patent owners against the United States for patent infringement. 28 U.S.C. § 1498(a); *see also Zoltek Corp v. United States*, 672 F.3d 1309, 1316 (Fed. Cir. 2012) (en banc) ("[T]he Government not only waived sovereign immunity for its own unlawful use or manufacture of a patented invention, but, in most cases, assumed liability when its contractors did so."). In that regard, § 1498(a) provides that "the use or manufacture of [a patented] invention . . . by a contractor, a subcontractor, or any person, firm, or corporation for the Government and with the authorization or consent of the Government, shall be construed as use or manufacture for the United States." 28 U.S.C. § 1498(a). In other words, patent infringement by third-party companies is actionable in this Court "if two requirements are met:  (1) [the infringement] is conducted 'for the Government,' and (2) [the infringement] is conducted 'with the authorization or consent of the Government.'" *IRIS Corp. v. Japan Airlines Corp.*, 769 F.3d 1359, 1362 (Fed. Cir. 2014) (quoting 28 U.S.C. § 1498(a), and citing *Advanced Software Design Co. v. Fed. Reserve Bank of St. Louis*, 583 F.3d 1371, 1375–76 (Fed. Cir. 2009)).

The first requirement — that the infringement be "for the government" — is met when the plaintiff pleads facts showing that the action was done "for the benefit of the government." *Power Density Sols. LLC v. United States*, 159 Fed. Cl. 208, 214 (2022) (quoting *IRIS Corp.*, 769 F.3d at 1362). For third party-infringement claims, the government's benefit must be more than "incidental," but the government need not be the sole beneficiary of the infringement. *Power Density*, 159 Fed. Cl. at 214 (quoting *Advanced Software*, 583 F.3d at 1378).

The second requirement — government "authorization or consent" — may be either express or implied. *IRIS Corp.*, 769 F.3d at 1362. Authorization is express, for example, when the third party engages in infringing activity in order to comply with a legal obligation (*e.g.*, a regulatory or contract requirement). *Id.* (holding that airline company's alleged patent infringement was "authorized" when the company examined passports to comply with federal law). Implied authorization, on the other hand, may occur "other than by letter or other direct form of communication" — for example, "by contracting officer instructions, by specifications or drawings which impliedly sanction

and necessitate infringement, [or] by post hoc intervention of the Government in pending infringement litigation against individual contractors."  *Hughes Aircraft Co. v. United States*, 534 F.2d 889, 901 (Ct. Cl. 1976) (citation omitted).

## III.  STANDARD OF REVIEW

### A.  RCFC 12(b)(1)

The government challenges NetzVision's standing pursuant to Article III of the United States Constitution.  Article III standing is a threshold jurisdictional question. *Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1363 (Fed. Cir. 2010); *see also Superior Waste Mgmt. LLC v. United States*, 169 Fed. Cl. 239, 252 (2024) (citing cases for the proposition that "[a]lthough Article III's requirements are jurisdictional in a broad sense, they are more accurately characterized as prerequisites to subject matter jurisdiction").

The United States Court of Federal Claims, "though an Article I court, applies the same standing requirements enforced by other federal courts created under Article III." *Starr Int'l Co. v. United State*s, 856 F.3d 953, 964 (Fed. Cir. 2017) (quoting *Anderson v. United States*, 344 F.3d 1343, 1350 n.1 (Fed. Cir. 2003)) (internal quotation marks omitted). Indeed, our appellate court, the United States Court of Appeals for the Federal Circuit, has expressly applied Article III justiciability requirements to Tucker Act claims against the United States.  *Glass v. United States*, 258 F.3d 1349, 1355 (Fed. Cir. 2001).  That makes a great deal of sense, as the Court of Federal Claims is empowered to enter final judgments on any "claim, suit, or demand against the United States arising out of the matters involved in the *case or controversy*."  28 U.S.C. § 2519 (emphasis added).  That statute clearly tracks Article III's "case-or-controversy requirement," *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992), and thus imports its minimum standards.  There are yet additional reasons for applying Article III requirements in this Court.  *See Emerald Int'l Corp. v. United States*, 54 Fed. Cl. 674, 677 n.5 (2002).[5]

---

[5] In *Emerald Int'l Corp.*, Judge Allegra explained why "a constitutional doctrine ingrained in Article III of the Constitution would be applied to an Article I court":

> First, the Supreme Court has indicated that Article I courts, like their Article III counterparts, exercise the judicial power of the United States.  *See, e.g., Freytag v. Commissioner*, 501 U.S. 868, 889 (1991).  Second, the statute empowering this court to enter final judgments specifically refers to "case or controversy," 28 U.S.C. § 2519, thereby appearing to invoke the Article III requirements.  Finally, Congress has specified that judgments of this court are reviewable by the Court of Appeals for the Federal Circuit and, ultimately, the Supreme Court, both Article III

In patent cases, specifically, the Federal Circuit has held that "'the plaintiff must demonstrate that it held enforceable title to the patent at the inception of the lawsuit' to assert standing." *Abraxis Bioscience*, 625 F.3d at 1364 (quoting *Paradise Creations, Inc v. UV Sales, Inc.*, 315 F.3d 1304, 1309–10 (Fed. Cir. 2003)).  A patent holder can transfer patent rights to give the transferee standing to sue for infringement of the patent.  And "[e]ven if the patentee does not transfer formal legal title, the patentee may effect a transfer of ownership for standing purposes if it conveys all substantial rights in the patent to the transferee."  *Propat Int'l. Corp. v. Rpost, Inc.*, 473 F.3d 1187, 1189 (Fed. Cir. 2007).  The transfer of substantial rights is a sufficient and necessary condition for a plaintiff to have standing in a patent infringement case; in other words, *only* the owner of the patent may bring an infringement suit.  *See, e.g.*, *Power Density Solutions, LLC v. United States*, 2023 WL 2624386 at *4 (Fed. Cl. Mar. 24, 2023) ("[A]s the sole owner of the asserted patents at the time this suit was filed, Power Density stands as the only plaintiff satisfying the constitutional standing requirements.").

The government also argues that Dr. Maimon's complaint should be dismissed because he did not plead allegations sufficient to establish subject-matter jurisdiction over the alleged infringement of his patents by third-party companies.  MTD at 12.  The plaintiff "bears the burden of establishing the court's jurisdiction over its claims by a preponderance of the evidence."  *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011).  To determine whether jurisdiction is proper, this Court generally "must accept as true" all non-conclusory factual allegations in a plaintiff's complaint, as well as "all reasonable inferences in favor of the plaintiff."  *Id.*

Motions to dismiss for lack of subject-matter jurisdiction under the Rules of the Court of Federal Claims ("RCFC") 12(b)(1) can be either facial or factual challenges.  *Perry v. United States*, 149 Fed. Cl. 1, 11 (2020), *aff'd*, 2021 WL 2935075 (Fed. Cir. July 13, 2021).  In a factual challenge, the government "challenges the truth of jurisdictional facts alleged in the complaint," and "the court accepts as true [only] all *uncontroverted* factual allegations in the complaint, and construes them in the light most favorable to the plaintiff."  *Chemehuevi Indian Tribe v. United States*, 104 F.4th 1314, 1320 (Fed. Cir. 2024) (emphasis added and cleaned up).  A facial challenge, on the other hand, "simply

---

tribunals that would be unable to perform such review absent a justiciable case or controversy.

54 Fed. Cl. at 677 n.5 (internal citations omitted).

challenges the court's subject matter jurisdiction based on the sufficiency of the pleading's allegations," and all of the plaintiff's non-conclusory factual "allegations are taken as true and construed in a light most favorable to the complainant." *Id.* at 1320–21 (cleaned up).

Here, the government's motion to dismiss asserts a facial challenge to this Court's jurisdiction to decide Dr. Maimon's claims. Accordingly, this Court assumes that the nonconclusory factual allegations in Dr. Maimon's complaint are true for the purposes of resolving the government's motion.

### B. RCFC 12(b)(6)

"To survive a motion to dismiss under Rule 12(b)(6), a complaint must 'contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Bot M8 LLC v. Sony Corp.*, 4 F.4th 1342, 1352 (Fed. Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). In patent infringement cases, specifically, the Federal Circuit employs a "notice and plausibility" standard to evaluate 12(b)(6) motions. *Power Density*, 159 Fed. Cl. at 218 (citing *K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1286 (Fed. Cir. 2013); and *JG Techs., LLC v. United States*, 156 Fed. Cl. 691, 710 (2021)).

Just as in *Twombly* and *Iqbal*, the Federal Circuit's standard does not mean the plaintiff must prove his case at the pleading stage. *See Bot M8*, 4 F.4th at 1352 (citing *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018)). Nor is a plaintiff in a patent case "required to plead infringement on [a patent claim] element-by-element basis." *Id.* Rather, a plaintiff's complaint must state a plausible ground for entitlement to relief and support such grounds "with sufficient factual content." *Id.* This factual content is sufficient if it "place[s] the alleged infringer 'on notice of what activity . . . is being accused of infringement." *Id.* (quoting *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017)). As with the application of most legal tests, the devil often lies in the factual details.

IV.  DISCUSSION

The government, in its motion to dismiss, argues that Dr. Maimon's complaint: (1) failed to allege facts demonstrating that NetzVision has standing to sue for the infringement of Dr. Maimon's patents at issue (RCFC 12(b)(1)); (2) failed to plead sufficient, non-conclusory facts to establish government authorization of alleged third-party infringement, pursuant to 28 U.S.C. § 1498 (RCFC 12(b)(1)); and (3) did not plead facts with sufficient specificity to support infringement claims (RCFC 12(b)(6)).  For the reasons discussed below, this Court grants the government's motion on the standing issue.  NetzVision lacks standing to pursue claims based on the patents at issue and is dismissed from this case, pursuant to RCFC 12(b)(1), for lack of jurisdiction.  The other grounds for dismissal are denied as moot (and without prejudice) because this Court grants Dr. Maimon's request to amend his complaint to cure what would otherwise be a deficient one, just as the government argues.

### A.  NetzVision Lacks Standing

NetzVision lacks standing to pursue infringement claims based on Dr. Maimon's patents.  As the government points out in its reply brief, Dr. Maimon does not contest that NetzVision lacks standing.  Def. Reply at 19–20.  Instead, Dr. Maimon relies on a recent Federal Circuit case, *Intellectual Tech, LLC v. Zebra Technologies Corp.*, 101 F.4th 807 (Fed. Cir. 2024), for the proposition that "[a]t least one plaintiff must have standing to seek each form of relief requested in the complaint."  Dr. Maimon reads this quote to imply that a plaintiff may *lack* standing as long as a co-plaintiff has standing.  Pl. Resp. at 40 ("Where two plaintiffs seek the same relief, only one needs to have constitutional standing." (citing *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 581 U.S. 433, 440–42 (2017)).

But this argument fundamentally misunderstands both the constitutional standing requirement and the Federal Circuit's holding in *Intellectual Tech.*  The correct principle expressed in *Intellectual Tech* and *Town of Chester* is simply that "a plaintiff must demonstrate standing separately for each form of relief sought."  *Town of Chester*, 581 U.S. at 439 (citation omitted).  In other words, a plaintiff can't indiscriminately add forms of relief to a complaint simply because he has shown he has standing to pursue one of them.  Nor can a plaintiff *without* standing be party to a case simply because a fellow plaintiff has standing.  *Intellectual Tech* certainly does *not* stand for the latter proposition.  In fact, in *Intellectual Tech* — also a patent infringement case — the "only question" before the Federal Circuit was "whether [the plaintiff] demonstrated the irreducible constitutional

minimum of an injury in fact," which itself turned solely on whether the plaintiff "retained an exclusionary right" to the patent in question. *Intellectual Tech*, 101 F.4th at 813 (emphasis omitted). Here, unlike in *Intellectual Tech*, both parties agree that NetzVision lacks an exclusionary right to Dr. Maimon's patents — at least at the moment — and, thus, it lacks standing to sue.[6]

### B. Dr. Maimon Failed to Allege Sufficient Facts Demonstrating the Government's Authorization and Consent

Dr. Maimon's complaint asserts that various third-party companies — as part of the VISTA program — researched and developed infrared sensors using his patented nBn technology, listing "at least" fourteen companies that allegedly infringed his patents. Compl. ¶ 17. The complaint, however, provides details about the alleged actions of only four of those companies: RTX Corporation, L3-Harris, Teledyne/FLIR, and HRL. *Id.* ¶¶ 74–90. Dr. Maimon's complaint also provides a bullet point list of nine alleged nBn-related procurements. *Id.* ¶ 92. But despite these lists of companies, products, and procurements, Dr. Maimon fails to allege the requisite *connections* between VISTA — or some other government action, including the identified procurements — the third-party companies, and the putative infringing products sufficient to satisfy the requirements of 28 U.S.C. § 1498(a) and RCFC 12(b)(1).

To survive the government's RCFC 12(b)(1) motion for lack of subject-matter jurisdiction, Dr. Maimon must allege non-conclusory facts that show that the specified companies performed work or developed identified products for the government and with the government's authorization or consent. Dr. Maimon failed to do this, however. As the government correctly points out in its motion to dismiss, Dr. Maimon's complaint "contains no factual allegations regarding the use of any of the Asserted Patents during the VISTA program other than conclusory allegations of use." MTD at 3. In large part, this is because the complaint provides no details regarding VISTA or how it functioned or what the government actually did as part of that program. Instead, Dr. Maimon

---

[6] This Court cautions counsel to accurately represent the holdings of cases going forward. If counsel is going to argue that a particular case supports a novel proposition — or that the law of this circuit should be extended in a previously unrecognized manner — this Court expects counsel to flag the issue appropriately. *See* RCFC 11(b)(2).

appears to rely on some vague assertions that the government coordinated some sort of engineering collaboration. *See, e.g.*, Compl. ¶ 73.[7]

While Dr. Maimon *does* allege that several third-party companies participated in VISTA — and that VISTA's primary objective was "the research, development, manufacture, and prototyping of new infrared technologies that would lower dark current in infrared detectors," *id.* ¶ 62 — he does not explain how VISTA's focus on infrared detectors necessarily means that particular companies infringed his patents, how the VISTA program led to the development of any of the allegedly infringing products, or how VISTA functioned as an effective authorization of infringement sufficient for 28 U.S.C. § 1498(a). *See, e.g.*, *Pieczenik v. United States*, 2023 WL 5031507 at *2 (Fed. Cir. Aug. 8, 2023) (finding no jurisdiction for a § 1498(a) claim where there were "no factual allegations linking the accused use to any authorization and consent by the government, whether pursuant to [agreements identified by the plaintiff] or otherwise").

Perhaps the closest Dr. Maimon gets to connecting any dots between VISTA, a specific third-party company, and infringing product(s), is the complaint's section regarding L3-Harris. Compl. ¶ 81. There, Dr. Maimon cites a slide from an L3-Harris company presentation that he claims "confirms" that Strained Layer Superlattice ("SLS") Focal Plan Arrays that "use the nBn invention" were both "developed for and during the VISTA program and implemented in at least the Onyx and Night-Warrior products." *Id.* ¶ 81 (fig. 19). The referenced slide does seem to contain a picture from the "[f]irst L3Harris SLS video for the VISTA program," and indicates that the technology "led to early insertion of SLS technology into Onyx . . . and HD Night Warrior." *Id.* (Fig. 19). But this slide is not sufficient to satisfy § 1498(a). This Court has jurisdiction over third-party infringement only if the government *both* benefitted from *and* authorized the infringement. Simply alleging that a participant in a government-run consortium

---

[7] *But see* https://www.sto.nato.int/publications/STO%20Meeting%20Proceedings/STO-MP-SET-241/MP-SET-241-1-1P.pdf (https://perma.cc/54EX-QCH6); https://sam.gov/opp/a69aab 0c822d01fc9acb98aff01efe8b/view (https://perma.cc/6PZH-LSJT) ("Pre-Solicitation and Industry Day Notice: Vital Infrared Sensor Technology Acceleration (VISTA) Program"); https://www.militaryaerospace.com/defense-executive/article/16724271/industry-briefings-set-for-april-29-30-for-vital-infrared-sensor-technology-acceleration-vista-program (https://perma.cc/P85S-NFV9); https://www.militaryaerospace.com/communications/article/1671877 2/army-night-vision-researchers-look-to-raytheon-to-develop-advanced-ir-focal-plane-arrays (https://perma.cc/WBD9-72CV); https://www.militaryaerospace.com/communications/artic le/16719341/army-looks-to-teledyne-scientific-to-refine-infrared-focal-plane-array-night-vision -technology (https://perma.cc/28M8-DL97).

demonstrated products using allegedly infringing technology is insufficient to meet § 1498(a)'s dual requirements.

Dr. Maimon's further reliance on various procurements identified in the complaint, Compl. ¶ 92, are also insufficient absent more factual details. The allegations are extremely vague. For example, the first bullet point identifies "Javelin Command and Launch Unit Upgrade" which Dr. Maimon "understood to be produced by L3Harris." *Id.* But the complaint never defines what the "Javelin Command and Launch Unit Upgrade" are, never explains how the products infringe Dr. Maimon's patents, doesn't list any government agency that allegedly procured the products, and doesn't explain how the government authorized their production. Another bullet point identifies "Apache Helicopter manufactured by Boeing." *Id.* But surely Dr. Maimon cannot simply point the government to a large and complex weapons system and leave the government guessing about his infringement theory. Moreover, nothing in that allegation provides details sufficient to satisfy § 1498(a)'s twin requirements of both government benefit and authorization.

Of course, this Court recognizes that Dr. Maimon may not have all the details of confidential (and perhaps classified) military procurements that use cutting-edge infrared technology. This Court further acknowledges the Federal Circuit's admonition that "[a] defendant cannot shield itself from a complaint for direct infringement by operating in such secrecy that the filing of a complaint itself is impossible." *K-Tech.*, 714 F.3d at 1286. But for this Court to have jurisdiction to decide Dr. Maimon's claims, he must at minimum plead facts that name specific agencies and specific products and provide some details regarding how those products infringe his patents. If the confidential or classified nature of the item or program precludes Dr. Maimon from providing additional details to the government (and this Court), he must, at a minimum, make *that* assertion with some supporting, detailed factual allegations. If this Court were to permit infringement allegations regarding allegedly classified products based on nothing more than "information and belief," the government could be subject to virtually endless, burdensome, and costly fishing expeditions. That cannot be the law.

### C. Dr. Maimon Failed to Allege Facts Sufficient to Put the Government on Notice of What Devices or Activities Are Being Accused of Infringement

Beyond Dr. Maimon's failure to adequately allege government authorization of infringement, his complaint suffers from two other major defects pursuant to RCFC

12(b)(6).  First, the complaint fails to put the government on notice of precisely *which* products allegedly infringe his several patents.  As discussed *supra*, Dr. Maimon's complaint asserts the infringement of five patents, by over a dozen VISTA participants, via potentially innumerable products made by those participants.  Where products are identified, the descriptions are vague at best.  Second, the complaint fails to allege precisely *how* these third-party products infringe upon his patents.  This overall lack of detail fails to put the government "on notice of what activity" or devices are "being accused of infringement."  *Bot M8*, 4 F.4th at 1352.

There are many examples of the complaint's factual deficiencies.  The complaint, for instance, alleges that "Teledyne FLIR developed products such as its Neutrino and HISS thermal sights under work on the VISTA program that upon information and belief use Dr. Maimon's inventions."  Compl. ¶ 84.  The only other reference to "Neutrino" or "HISS" occurs later, *see id.* ¶ 92, along with a longer list of allegedly infringing government procurements.  But nowhere in the complaint is there a description of what those Neutrino or HISS products are.  Nor does Dr. Maimon connect the functions or features of the "Neutrino" or "HISS" products to a specific patent beyond the vague allegation that the products "use Dr. Maimon's inventions."  *Id.*

Similarly, when discussing L3-Harris, Dr. Maimon asserts that a company presentation "confirms use" of "the nBn invention . . . in *at least* the Onyx and Night-Warrior products."  Compl. ¶ 81 (emphasis added).  For Onyx, Dr. Maimon does provide some details (*see* Compl. at Exhibit G), but he still fails to explain what "Night-Warrior" is, or *how* either product infringes any specific patent.

Regarding the complaint's laundry list of products, *see* Compl. ¶ 92, nearly all are undefined or are unconnected to specific patents.  Instead, Dr. Maimon attempts to generally allege infringement of each patent at issue by focusing each count of infringement on a single patent, combined with the conclusory assertion that the government makes or authorizes "products that literally practice at least one claim" of each patent.  *Id.* ¶¶ 94, 98, 102, 106, 110.  But nowhere does the complaint clearly specify which products infringe which patents or which claims — or even how many products the complaint is accusing of infringement.

Dr. Maimon quite obviously hopes that discovery will uncover even more.  But discovery, as the government correctly argues, MTD at 25–26, is not a license for a plaintiff to engage in a costly fishing expedition to determine whether he or she has a

case. Rather, the price of entry into the discovery phase of a case is a proper complaint with sufficient detail to establish that a plaintiff, indeed, has a case. *Chemehuevi Indian Tribe v. United States*, 150 Fed. Cl. 181, 201 (2020) ("[T]here is a difference between, on the one hand, alleging facts demonstrating that the government in fact *did* breach its trust duties, thereby causing injury to the [plaintiff] — and obtaining discovery to prove that case — and the [plaintiff's] merely asserting that it *does not know whether* it has been injured, and requiring discovery to learn whether it has a claim at all[.]"), *aff'd in part*, 104 F.4th 1314 (Fed. Cir. 2024).

This is not to say that Dr. Maimon's complaint is hopelessly meritless, or that it lacks any concrete allegations supporting an infringement claim. For example, when discussing HRL, Dr. Maimon identifies specific product numbers and patents, and alleges facts to demonstrate that HRL's cameras use his nBn technology. Compl. ¶¶ 88–90. To be clear, this Court does not determine at this point whether Dr. Maimon's claims involving HRL would definitively survive a renewed motion to dismiss that focuses on those allegations. Rather, this Court's only point is that Dr. Maimon's allegations involving HRL do a much better job of putting the government on notice of how it is allegedly responsible for third-party infringement of Dr. Maimon's patents than many of Dr. Maimon's other sets of allegations.

In general, as the Federal Circuit explained in *Bot M8*, "[t]he level of detail required" to survive a motion to dismiss for failure to state a claim in patent infringement cases "will vary depending upon a number of factors, including the complexity of the technology, the materiality of any given element to practicing the asserted claim(s), and the nature of the allegedly infringing device." *Bot M8*, 4 F.4th at 1353. Here, the technology Dr. Maimon has patented is fairly complex, and putting the government on notice requires more than dumping a vague list of products and listing agencies that may have used his technology.

Dr. Maimon's claims are easily contrasted with those at issue in *Disc Disease Solutions, Inc. v. VGH Solutions, Inc.*, 888 F.3d 1256 (Fed. Cir. 2018). In that case, the plaintiff alleged infringement of its patent for a spinal brace and attached photographs of the allegedly infringing products to the complaint. *Id.* at 1257–58. The trial court dismissed the complaint, but the Federal Circuit reversed, observing that "[t]his case involves a simple technology." *Id.* at 1260. The complaint "identified the three accused products . . . by name and attached photos of the product packaging," and the Federal Circuit explained that, in the context of that specific technology, "[t]hese disclosures and

allegations are enough to provide [the defendant] fair notice of infringement of the asserted patents." *Id.* Infrared sensors and nBn technology are nowhere near as straightforward as a wearable back brace. Dr. Maimon must do more here than just name a few products and attach a few pictures to his complaint, particularly where those pictures are not of infringing nBn technology *per se*, but of devices or products that allegedly include the infringing nBn technology — the particulars of which cannot be understood merely by looking at a picture.

Permitting this case to move forward to discovery on this complaint would lead to precisely what the government warns this Court against — permitting a plaintiff to embark on a broad fishing expedition to identify proper claims. *See, e.g.*, MTD at 1. But that would put the proverbial cart before the horse. *See Chemehuevi*, 150 Fed. Cl. at 215 ("The Court may not presume . . . legal conclusions are true for the purposes of resolving a RCFC 12(b)(6) motion to dismiss, nor will the Court permit the [plaintiff] to engage in a fishing expedition."). That said, this Court will give Dr. Maimon another chance to get it right.

## V.    CONCLUSION

Dr. Maimon's complaint, as filed, does not allege sufficient facts that, when assumed to be true, demonstrate the necessary jurisdictional prerequisites pursuant to 28 U.S.C. § 1498(a). In particular, Dr. Maimon fails to identify not only *which* specific products produced by which specific companies — and for which specific government agencies — infringe his patents, but also *how* those products allegedly infringe. Nevertheless, this Court grants Dr. Maimon's request to file an amended complaint that, *inter alia*: (1) alleges facts that more clearly explain how the government authorized, and benefitted from, infringement by the various third-party companies identified in the complaint (whether through VISTA or otherwise); and (2) alleges facts that define and connect the identified products to specific authorizations, specific companies, as well as the alleged patents.

Accordingly, the government's motion to dismiss pursuant to RCFC 12(b)(1) is **GRANTED** as to NetzVision's standing. The Clerk is directed to **DISMISS** NetzVision from this case, without prejudice. The remainder of the government's motion pursuant to RCFC 12(b)(1) and 12(b)(6) is **DENIED** as **MOOT** and without prejudice, pending the

filing of Dr. Maimon's amended complaint to cure the defects identified in this decision. Dr. Maimon shall file his amended complaint on or before **May 19, 2025**.

**IT IS SO ORDERED**.

s/Matthew H. Solomson
Matthew H. Solomson
Judge